Charles J. LaDuca (NY State Bar Number 3975927)
William H. Anderson (To Apply *Pro Hac Vice*)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
Tel: (202) 789-3960
Fax: (202) 789-1813
charlesl@cuneolaw.com
wanderson@cuneolaw.com

Attorneys for Plaintiff and Proposed Class
[Additional Attorneys Listed on Signature Page]

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DELICIA TAYLOR, on behalf of herself and others similarly situated,<br><br>PLAINTIFF,<br><br><br>v.<br><br>L'ORÉAL USA, INC. and SOFTSHEEN-CARSON, LLC,<br>DEFENDANTS. | Case No. 1:16-cv-08322<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### NATURE OF THE ACTION

Plaintiff Delicia Taylor ("Plaintiff" or "Taylor"), on behalf of herself and all others similarly situated, by her undersigned attorneys, alleges as follows:

1.      This is a class action brought by Plaintiff, on behalf of herself and other similarly situated persons, against L'Oréal USA, Inc. and Soft Sheen-Carson, LLC (together, "L'Oréal" or "Defendants").  Plaintiff seeks damages and equitable remedies for herself and the Class (defined below), which includes consumers who have purchased a defective hair relaxer kit—the

1

SoftSheen-Carson Optimum Amla Legend No-Mix, No-Lye Relaxer (the "Amla Relaxer" or the "Product").

2.     L'Oréal introduced the Amla Relaxer in 2013 through its subsidiary, Soft Sheen-Carson, which focuses on beauty products for African-American women.  Defendants claimed the Product was a healthy, beneficial product that would provide "fuller, silkier hair" and "respect of hair fiber integrity."  Defendants emphasized the ingredient Amla Oil, an antioxidant-rich oil derived from the Indian Amla fruit, which is purported to have a wide range of health benefits.

3.     L'Oréal emphasized the gentle, safe nature of the Product, selling it as a "NO-LYE" relaxer that could "rejuvenate" all hair types.

4.     The Product in fact contains very little Amla Oil.  Its active ingredients are potentially dangerous and toxic chemical irritants.

5.     As described below, an inherent design and/or manufacturing defect in Defendants' Amla Relaxer causes significant hair loss and breakage, as well as irritation, blistering, and burning of the scalp.  Thousands of women who purchased the Amla Relaxer were shocked and distressed to experience these disturbing and serious injuries.

6.     The hair loss is not *de minimus*—consumers who suffer hair loss often lose a substantial percentage of their hair, and are left with bald spots and/or burns and scabs on their scalps.  As a result, beyond the cost of the Product, consumers are forced to undertake a variety of costly efforts to regain their hair and mask the ill effects of the Product.  Plaintiff has suffered injury in fact and loss of money or property as the result of her use of the Amla Relaxer.

7.     This action arises from L'Oréal's failure, despite its longstanding knowledge of a material defect, to disclose and/or warn Plaintiff and other consumers that Amla Relaxer is dangerous and defective.

8.     Plaintiff and other Class members relied on L'Oréal's promise of a safe and rejuvenating Product that would strengthen and nourish their hair.

9.     Plaintiff and other Class members have been damaged by Defendant's concealment and non-disclosure of the defective nature of the Amla Relaxer because they were misled into purchasing products of a quality and value different than they were promised. L'Oréal knew of the problems with Amla Relaxer, due to customer complaints and, upon information and belief, independent knowledge of the Product's problems within the company. Despite this knowledge, Defendant continues to sell the Product on false pretenses, and has failed and/or refused to provide an adequate remedy.

10.    Had Plaintiff and other Class members known about the problems caused by Amla Relaxer at the time of purchase, they would not have bought it.

11.    As a result of L'Oréal's practices, Plaintiff and the other Class members have suffered injury in fact, including economic damages.

12.    Plaintiff therefore brings this action on behalf of herself and a proposed Class of similarly situated purchasers of Defendants' Amla Relaxer.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant

are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391 inasmuch as the unlawful practices are alleged to have been directed from this District.  Specifically, Defendant L'Oréal has its principal place of business in this District, and regularly conducts and directs its business in and from this District.

## PARTIES

15.     Plaintiff Delecia Taylor ("Plaintiff Taylor") is a resident of Illinois currently living in Great Lakes, Illinois.

16.     Defendant L'Oréal USA, Inc. is a corporation whose principal place of business is located at 10 Hudson Yards, New York, New York 10001.  It is the United States subsidiary of L'Oréal S.A., a French cosmetics group and the world's largest cosmetics company.  At all times relevant to this complaint Defendant has transacted business in this judicial district and has directed its United States operations from this district.  L'Oréal developed, marketed, distributed, and sold the Amla Relaxer through its subsidiary brands Softsheen-Carson, SoftSheen-Carson Laboratories, and Optimum Salon Haircare, as part of its Amla Legend product line.

17.     Defendant Soft Sheen-Carson, LLC is a New York limited liability company.  At all times relevant to this matter, Soft Sheen-Carson, LLC was a citizen of New York with its primary place of business in New York, New York.

## COMMON FACTS

18.     At all relevant times herein, L'Oréal has developed, manufactured, marketed, sold and distributed Amla Relaxer throughout the United States.

19. The SoftSheen-Carson brand is an outgrowth of L'Oréal's acquisitions in 1998 and 1999, and merger in 2000, of two leading African-American beauty product companies.

20. In marketing through the SoftSheen-Carson brand, L'Oréal claims to carry on a 110 year tradition of providing "scientifically-advanced beauty tools" to African-American women that are "safe" and "guaranteed to provide great results." *See* www.softsheen-carson.com/about-us. In fact, L'Oréal consistently emphasizes safety and scientific sophistication in its presentation of SoftSheen-Carson products: "By relying upon the depth of our scientific know-how, we are continually advancing our products in order to surpass the industry standards, making them the safest and most effective beauty products for our consumers." *Id.*

**Amla Relaxer**

21. L'Oréal launched the Amla Legend product line in 2013. This line of products claims to cause the rejuvenation of hair through the use of Amla Oil, an oil derived from an Indian fruit also known as the Gooseberry, which is high in antioxidants.

22. L'Oréal has partnered with reality television star Cynthia Bailey, actress Tracy Ellis Ross, and celebrity stylist Johnny Wright, in order to promote the Amla Legend collection.

23. In a 2013 press release for the Amla Legend collection, L'Oréal stated that "[w]hat makes Amla Oil so special and different from other oil extracts like Olive Oil or Argan Oil is that this super fruit is rich in vitamin C, proteins, minerals and anti-oxidants, which nourishes and revitalizes the scalp and hair fiber." It stressed the ability of Amla Oil to "nourish and revitalize the scalp and hair fiber" and protect against "dryness, breakage, and dullness."



24.     On the SoftSheen-Carson website and in its Amla Legend collection packaging, L'Oréal consistently represents Amla Oil has having a protective and rejuvenating effect on hair and scalp.  These representations lead consumers to believe that the products are formulated in order to be safe, healthy, and rejuvenating for both hair and scalp.

25.     Amla Relaxer is a chemical hair relaxer product designed to make hair appear



straighter.  The Amla Relaxer is part of the Amla Legend product line, and the representations made about the entire product line therefore apply to Amla Relaxer.  The Amla Relaxer package prominently reads: "Amla Legend: Rejuvenating Ritual."  It features a picture of a droplet of Amla Oil and states "refills to reveal fuller, silkier hair."

26.     L'Oréal makes numerous representations about Amla Relaxer aimed at communicating the safe, gentle, natural, and nourishing characteristics of the product.  Such representations include:

- "NO-LYE"

- "Amla is derived from the Amla Superfruit, and is known as a powerful anti-oxidant, rich in vitamins and minerals, and renowned for its natural rejuvenating properties of intense nourishment and conditioning"

- "Anti-Dryness"

- "Anti-Breakage"

- "Protects Scalp & Skin"

- "Ensures an easier relaxing process for unified results and superior respect of hair fiber integrity."

27.     Through these representations, Amla Relaxer targets consumers looking for a gentle, non-damaging hair relaxer.  For example, the prominent statement "NO-LYE" is designed to lure consumers who know that lye is a harsh chemical, found in some other hair relaxers, which can damage hair and burn the scalp.

28.     As L'Oréal is well aware, Amla Relaxer contains other ingredients that are as caustic, irritating, and dangerous as lye.  Consumers seeking a product less irritating and harsh than lye were plainly deceived.

29.     Amla Relaxer features Amla Oil (phyllanthus emblica fruit extract) only as the very last ingredient on its ingredient list.  Many of the other ingredients are dangerous, caustic,

PRODUCT DETAILS      **INGREDIENTS**

AQUA / WATER / EAU, PARAFFINUM LIQUIDUM / MINERAL OIL / HUILE MINERALE, PETROLATUM, CETEARYL ALCOHOL, POLYSORBATE 60, BUTYLENE GLYCOL, HEXYLENE GLYCOL, LITHIUM HYDROXIDE, PEG-75 LANOLIN, OLETH-10, COCAMIDOPROPYL BETAINE, PARFUM / FRAGRANCE, COCOS NUCIFERA OIL/COCONUT OIL, PHYLLANTHUS EMBLICA FRUIT EXTRACT

and irritating chemicals of unclear toxicity.

30.     For example, butylene glycol and hexylene glycol are well-known to be hazardous substances that irritate the skin, respiratory tract, and other tissues.   Cocamidopropyl betaine is a synthetic surfactant associated with irritation and contact dermatitis.  And PEG-75 lanolin and oleth-10 are synthetic emulsifying agents that, when not produced with great care, can be contaminated with highly carcinogenic and toxic by-products of their manufacturing process.

**PLAINTIFF'S EXPERIENCE**

31.     Plaintiff Taylor has been using various perm products throughout her adult life and also attended beauty school for a time. Thus, Plaintiff Taylor is familiar with the process of applying and maintaining hair relaxers and other perm products.  At no time prior to 2015 has Plaintiff Taylor had a negative reaction to using hair relaxers or other perm products or hair treatments.

//

//

//

8

32.     Below are some pictures of Plaintiff Taylor's hair prior to June of 2015, with a normal, healthy head of hair.



33.     On or around June of 2015 Plaintiff Taylor bought the Amla Relaxer from a beauty supply store in Great Lakes, Illinois. Plaintiff Taylor bought the Product for approximately $11-12.

34.     Prior to her first use with the Product, Plaintiff Taylor did a scalp test of the Product to ensure that the Product would not immediately irritate her skin or otherwise give her a

negative reaction. The scalp test did not irritate Plaintiff Taylor, so she decided to go ahead with using the Product.

35.     When Plaintiff Taylor first applied the Product to her hair, the results were generally acceptable. She felt no unusual irritation and had no immediate ill effects. Initially satisfied with her purchase, Plaintiff Taylor bought the Product again approximately 8 months later in January of 2016.

36.     The second time Plaintiff Taylor used the Product, she noticed immediate and excruciatingly painful scalp irritation, which she did not feel the first time. She immediately felt like the Product was giving her chemical burns.

37.     Shortly after she finished applying and rinsing out the product in January of 2016, Plaintiff Taylor began noticing her hair falling out on her pillow. Plaintiff Taylor had never noticed hair falling out on her pillow prior to application of the Product.

38.     After using the Product the second time, Plaintiff Taylor continued to suffer from scalp irritation as a result of her use of the Product. She attempted to soothe the irritation by using oils and balms, but the irritation continued. The irritation would then turn into sores. These sores would then, in turn, become bald spots.

39.     Plaintiff Taylor accordingly continued to notice her hair rapidly and unnaturally thinning. In addition to her rapidly developing bald spots, Plaintiff Taylor's hair became brittle and would begin to break and split. Ultimately, Plaintiff Taylor lost so much hair that she was forced for the first time in her life to start wearing wigs.

40.     After her second application in January of 2016, Plaintiff Taylor never used the Product again.

41.     Nevertheless, Plaintiff Taylor's hair has not recovered. She continues to have irritation, redness, hair breakage, and thinning hair as a result of her use of the Product.  She feels ashamed, embarrassed, and humiliated on a daily basis as a result of her unnatural and premature baldness.

42.     Pictures of the effects of the Product on Ms. Taylor's hair are startling.



## ADDITIONAL COMMON FACTS

43.     The Amla Relaxer is sold nationwide through leading retailers including Walmart, CVS, as well as online through Amazon.com and the SoftSheen-Carson website.

44.     Plaintiff's experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same issues with Amla Relaxer. A very small sample of the numerous online complaints—dating back several years—appears below:

**https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed September 26, 2016).**

I have never experienced burns like the burns from this product. [By] the time I walked up the stairs to the bathroom it was unbearable. I pray my skin returns to normal and they should be sued.

**https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed September 26, 2016).**

***I WANT TO SUE THIS COMPANY. ****I AM 42 YEARS OLD AND I HAVE BEEN RELAXING MY OWN HAIR SINCE I WAS 17 YEARS OLD, AND HAVE NEVER BEEN THIS TRAUMATIZED. YESTERDAY 8-21-13 WENT AND PURCHASED THIS AMLA RELAXER. (NORMALLY I USE MILD OR REGULAR). BUT THIS BOX DID NOT SAY IF IT WAS MILD, REGULAR OR SUPER STRENGHT. I ASKED THE SALES CLERK AND SHE SAID IT WAS FOR ALL HAIR TYPES. AROUND 8:25PM AFTER APPLYING THE SCLAP TREATMENT

12

BASE, I STARTED APPLYING THE RELAXER AND IMMEDIATELY MY SCALP WAS ON FIRE. 5-10 MINUTES LATER ALL THE HAIR AT THE FRONT OF MY HEAD FELL OUT AS I RINSED THIS CRAP OFF MY HAIR. [I] AM SO TRAUMATIZED BY THIS EXPERIENCE. NOW I AM COMPLETELY BALD ON THE FRONT PORTION OF MY HEAD (COMPLETELY BALD FROM THE CROWN TO MY FOREHEAD). AND TODAY 8-22-13 MY SCALP IS STILL HURTING AND BURNING. I ONLY HAVE HAIR IN THE BACK OF MY HEAD. I AM SO DEPRESSED AND TRAUMATIZED FROM THIS EXPERIENCE THIS COMPANY NEED TO STOP SELLING THIS PRODUCT. IT IS MISLABELED.

**https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed September 26, 2016).**

Don't use it! My 26 year old daughter is upstairs crying her eyes out because her hair is gone. And I (her mother) relaxed it for her. We followed directions she has been relaxing for years. We did not leave it on too long. She now has no hair on the sides or back of her head. Even with the scalp protector and vaseline around her edges No Hair and her scalp is burned badly I did notice a lot of hair loss during rinsing but never imagined this. Stay away from this product I didn't know how to do no stars so I did one but for us it's a big fat 0 stars.

**https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed September 26, 2016).**

DO NOT USE THIS PRODUCT!!!! I BOUGHT THIS RELAXER FROM A SALLY BEAUTY SUPPLY IN TEXAS. MY HAIR IS EXTREMEY DAMAGED. I HAVE A BALD SPOT IN THE CROWN OF MY HEAD, MY HAIR HAS COME OUT AROUND MY EDGES AND NAPE AREA AND THROUGHOUT MY HAIR I HAVE SHORT DAMAGED SPOTS. I WEAR MY HAIR SHORT AND NOW I HAVE ALMOST NO HAIR. I NOW HAVE TO WEAR [A] WIG. I AM DEVASTATED!!!! SOFT SHEEN NEEDS TO DO RIGHT BY US. ALSO, LADIES, WHAT ARE WE GOING TO DO ABOUT IT? I HAVE CONTACTED THE COMPANY TO SEE WHAT THEY WILL DO FIRST AND THEN I AM CONSIDERING A PETITION AND CONSUMER COMPLAINT. I AM A FORMER COSMETOLOGIST, SO I KNOW HOW TO APPLY A RELAXER. THIS IS THE FIRST TIME I HAVE EXPERIENCED THIS HORRENDOUS!

**https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed September 26, 2016).**

DO NOT USE THIS RELAXER IF YOU WANT TO KEEP YOUR HAIR!!! OMG!! WHY DID I NOT READ THE REVIEWS BEFORE APPLYING THIS PRODUCT TO MY HAIR!!!! I PURCHASED THIS PRODUCT ON THURSDAY, FEB 4, 2016 BECAUSE I NEEDED TO RE-TOUCH MY ROOTS ONLY! I WANTED TO TRY A DIFFERENT RELAXER AND USED OTHER ALMA LEGEND PRODUCTS SO THOUGHT WHAT COULD GO WRONG!! WHY JESUS, DID'NT I JUST STICK TO MY ORGANICS OLIVE OIL RELAXER!! NEEDLESS TO SAY I STARTED AT THE BACK OF MY HEAD AND WORKED MY WAY TO THE MIDDLE OF MY HEAD!

IT STARTED TO BURN, BUT NOTHING THAT I COULD NOT HANDLE SO I THOUGHT!! THEN THE BURNING STARTING TO GET WORSE!! SO IMMEDIATELY DECIDED LET ME JUST DO MY FRONT EDGES AND WASH OUT. I SERIOUSLY HAD THE PRODUCT ON NO LONGER THA[N] 20 MINUTES. I JUMPED IN THE SHOWER TO START WASHING THE RELAXER OUT USING COOL WATER, I GRABBED THE NEUTRALIZING SHAMPOO TO STOP THE PROCESSING AND TO POSSIBLY COOL DOWN THE BURNING, AND WHEN I SAY GLOBS OF HAIR STARTING TO SLIDE OUT OF MY HAIR. I MEAN WHOLE GLOBS OF HAIR!! NOT NORMAL 2-3 STRANDS. BUT A WHOLE SECTION OF THE MIDDLE OF MY HEAD IS BASICALLY GONE!! I STARTED SCREAMING AND CRYING AT THE SAME TIME AND GRAB EVERY DEEP CONDITIONER I OWNED!! BUT NOTHING WORKED!! IT WAS TOO LATE!! NOW I'M LITERALLY LEFT WITH THIN FRIED HAIR WITH SPOTS OF BROKEN OFF PIECES!! BIG CHANGE FROM MY THICK WAVY ROOTS HAIR THAT I WORK HARD TO MAINTAIN!! I'M SO UPSET THAT I'M THINKING OF SUING THIS COMPANY!! THEY NEED TO IMMEDIATELY TAKE THIS PRODUCT OFF THE MARKET!! IT'S THE WORST PRODUCT I HAVE EVER USED!! NOW I WILL HAVE TO FIGURE OUT IF I WANT [A] SHORT PIXIE CUT OR WAIT 2 WEEKS TO GET BRAIDS!! OR WAIT UNTIL MY SCALP STOPS BURNING!! UGH!! I HOPE THIS SAVES SOMEONE OUT THERE!! THINK I MAY STAY AWAY FROM RELAXERS FOR GOOD!!

**https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed September 26, 2016).**

I have long thick healthy bra strap length hair and usually use Soft & Beautiful Botanical for my touch-ups every 3-4 months. I decided to purchase this perm from Walmart thinking that because it's expensive, maybe it would be better than the Soft & Beautiful that I've used for years. Also because of it's "no mix" feature. Well...2 minutes after applying this product to the lower half of my head, trying carefully to avoid the scalp, my scalp was on fire. Now keep in mind that I do not have sensitive scalp and have never burned from any other relaxer. I honestly thought I was having an allergic reaction to the product. I quickly rinsed the crap off with their neutralizing shampoo. Even after rinsing 3-4 times, my scalp was still burning. I decided to use my own shampoo and added coconut, olive oil and any conditioner I could get my hands on to stop the stinging and breakage. Rinsed again another 4 times. I was in pain even after drying my hair. Now I have scabs all over my scalp. Since then, I've had to add olive oil to my scalp every day to soften the scabs and so that my [h]air does not continue to fall out. This is by far the wors[t] experience I've ever had with a relaxer. There really should be a class-action lawsuit against this product.12

**https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed September 26, 2016).**

All my hair came out don't buy this product

**https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed September 26, 2016).**

I purchased this perm because it was new. My hair fell out My head was burning so BADD after 3 minutes. I have pictures where my hair was just falling out in chunks. PLEASE DONT USE THIS PERM!!!!!!!! THIS PERM IS HORRIBLE!!!!! IM BALD ALL IN THE CENTER OF MY HEAD AND MY SCALP LOOKS WHITE LIKE ITS BURNT!!!!!!! MY HAIR IS STILL SHEDDING BADD AFTER USING THIS PERM THREE WEEKS AGO!!!!! I HAD THE MOST BEAUTIFUL HAIR!!!!!!!!!!!

**https://www.amazon.com/Softsheen-Carson-Optimum-Legend-Relaxer/dp/B00B1KM1XM (last accessed September 26, 2016).**

Attention ladies.. DO NOT USE THIS PRODUCT!!!!!!! My hair is falling out in clumps and I have no hair in the lower back of my head at all. This company has to be sued and this product needs to be taken off the market. No one should have to go through this at all. We need a class action lawsuit to go in effect immediately. I wish I read these reviews before I purchased this product..Alma Legends relaxer!!!!! Save yourself while you still have time. If you want to keep your hair and your sanity you will not use this product. I have been natural for at least two years and went to the store to purchase products for a blowout but the products weren't in stock so I decided to relax my hair, worst decision in my life!!! I will be obtaining a lawyer because this is just wrong. So once again...do not buy this product..please do not fall for their propaganda! I cannot stress this fact enough!! The worst!

45.     Despite knowing of these consumer complaints, L'Oréal has continued to market the Product and has failed to recall it or to provide adequate warnings or otherwise mitigate the adverse effects caused by the product.

46.     L'Oréal has made the false and misleading statements described above, and engaged in omissions and concealments concerning the Amla Relaxer, with the intent that consumers rely on such representations, omissions, and concealments.  Alternatively, L'Oréal was reckless in not knowing that its representations and omissions were false and misleading when they were made.

47.     Plaintiff and the Class members relied upon L'Oréal's misrepresentations and omissions concerning Amla Relaxer, and have been damaged as a direct and proximate consequence.  They would not have purchased Amla Relaxer had they not relied on L'Oréal's deceptive statements and omissions.

## CLASS ALLEGATIONS

48.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

49.     Plaintiff brings this action on her own behalf, and on behalf of the following Classes pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).  Specifically, the Classes consist of each of the following:

**National Class:**

All persons or entities in the United States who purchased Amla Relaxer from January 1, 2013 to the present.

Or, in the alternative,

18

**Illinois Subclass:**

All persons or entities in Illinois who purchased Amla Relaxer from January 1, 2013 to the present.

50.      Together, the National Class and Illinois Subclass shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Amla Relaxer for purposes of resale, and the Judge(s) or Magistrate(s) assigned to this case.

51.      Plaintiff reserves the right to amend or modify the Class definitions in connection with a motion for class certification or as warranted by discovery.

52.      This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in Federal Rule of Civil Procedure 23.

53.      <u>Numerosity</u>:  Plaintiff does not know the exact size or identities of the proposed Class, however, Plaintiff believes that the Class encompasses many thousands or tens of thousands of individuals who are dispersed geographically throughout the United States. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.  Class members may be notified of the pendency of this action by mail and/or electronic mail, supplemented if deemed necessary or appropriate by the Court by published notice.

54.      <u>Existence and Predominance of Common Questions of Fact and Law:</u> There are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class.  The damages sustained by Plaintiff and the other members of the Class flow from the common nucleus of operative facts surrounding Defendant's misconduct.  The common questions include, but are not limited to the following:

a.      whether Defendants failed to comply with their warranties;

19

     b.      whether Amla Relaxer causes hair loss;

     c.      whether Amla Relaxer contains a design defect;

     d.      whether and when Defendants had exclusive knowledge of but failed to disclose the existence and cause of the defect in Amla Relaxer;

     e.      whether Defendants' conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

     f.      whether Defendants' conduct constituted a breach of applicable warranties and/or gives rise to claims of unjust enrichment;

     g.      whether, as a result of Defendants' omissions and/or misrepresentations of material facts, Plaintiff and members of the Class have suffered an ascertainable loss of monies and/or property and/or value;

     h.      whether Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

55.    <u>Typicality</u>:  All of Plaintiff's claims are typical of the claims of the Class since each Class member was subject the same common inherent defect in the Product.  Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

56.    <u>Adequacy</u>:  Plaintiff will fairly and adequately represent the interests of the Class. She is committed to the vigorous prosecution of the Class' claims and has retained attorneys who are qualified to pursue this litigation and are experienced in class action litigation.

57.    <u>Superiority</u>:  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  While substantial, the damages suffered by each individual

Class member do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.   Further, it would be virtually impossible for the members of the Class to individually and effectively redress the wrongs done to them.   A class action regarding the issues in this case does not create any problems of manageability.   The class action device presents far fewer management difficulties than alternative methods of adjudication, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

58.   In the alternative, the Class may be certified because:

a.   the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

b.   The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede the ability to protect their interests; and

c.   Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## VIOLATIONS ALLEGED

## COUNT I

## BREACH OF WARRANTY

59.     Named Plaintiff repeats and re-alleges every allegation in paragraphs 1-58, as if set forth herein in full.

60.     Defendants sold Amla Relaxer in their regular course of business.  Plaintiff and Class members purchased the Products.

61.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1), New York and Illinois law, respectively.  Amla Relaxer costs more than five dollars.

62.     Plaintiff and Class members are "consumers" and "buyers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3) and New York and Illinois law, respectively.

63.     Defendants are a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) – (5).   Defendants are also a "manufacturer" and "seller" within the meaning of California and Florida law, respectively.

64.     Defendants made promises and representations in an express warranty provided to all consumers, which became the basis of the bargain between Plaintiff, Class members and Defendants.

65.     Defendants' written affirmations of fact, promises and/or descriptions as alleged are each a "written warranty."  The affirmations of fact, promises and/or descriptions constitute a "written warranty" within the meaning of the Magnuson-Moss Act, 15 U.S.C. §2301(6).

66.     By placing such products into the stream of commerce, by operation of law including the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et. seq.*, and the Uniform

Commercial Code § 2-314 and other applicable state laws, Defendants also impliedly warranted to Plaintiff and Class members that Amla Relaxer was of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it was made, of average worth in the marketplace, or not broken, unworkable, contaminated or flawed or containing a defect affecting the safety of the product), would pass without objection in the trade or business, and were free from material defects, and reasonably fit for the use for which they were intended.

67.     Defendants breached all applicable warranties because Amla Relaxer suffers from a latent and/or inherent defect that causes it to produce substantial hair loss, rendering it unfit for its intended use and purpose.  This defect substantially impairs the use, value and safety of Amla Relaxer.

68.     The latent and/or inherent defect at issue herein existed when the Amla Relaxer left Defendants' possession or control and was sold to Plaintiff and the Class members.  The defect was undiscoverable to Plaintiff and the Class members at the time of purchase.

69.     All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiff and others in terms of paying for the goods at issue.  Defendants, having been placed on reasonable notice of the defect in the Products and breach of the warranties, have had an opportunity for years to cure the defect for Plaintiff and all Class members, but has failed to do so.

70.     Defendants were on notice of the problems with the Amla Relaxer based on the complaints it received directly from Plaintiff and Class members, and from the plethora of public complaints.

71.     Defendants breached their express and implied warranties, as Amla Relaxer did not contain the properties Defendant represented.

72.     Defendants' breaches of warranty have caused Plaintiff and Class members to suffer injuries, paying for defective products, and entering into transactions they would not have entered into for the consideration paid.   As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and Class members have suffered damages and continue to suffer damages, including economic damages in terms of the cost of Amla Relaxer and the cost of efforts to mitigate the damages caused by same.

73.     As a result of the breach of these warranties, Plaintiff and Class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

## COUNT II

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*

### (Illinois Subclass Only)

74.     Named Plaintiff repeats and re-alleges every allegation in paragraphs 1-58 as though fully set forth at length herein.

75.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. Ann. § 505/1, *et seq.*, prohibits deceptive acts or practices in commerce.

76.     Section 2 of the ICFA provides as follows:


Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

24

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.  815 ILCS 505/2.

77.     Defendants have engaged in unfair competition and unfair, unlawful, deceptive, or fraudulent business practices by the conduct, statements, and omissions described above, and by concealing from Plaintiff and Class members the material fact that Amla Relaxer causes hair loss, hair damage, and scalp damage.  Defendants should have disclosed this information because they were in a superior position to know the true facts related to this defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to the defect prior to their purchases.

78.     Defendants acts of marketing and advertising the Product as "no-lye", "anti-breakage," "rejuvenating," "respects hair fiber integrity", and more, as set forth more fully above, as well as Defendants' failure to disclose the true nature of the Product, constitute deceptive acts under the IFCA.

79.     These acts and practices have also deceived Plaintiff and are likely to deceive reasonable consumers targeted by such statements and omissions.  In failing to disclose this material defect and suppressing other material facts from Plaintiff and Class members, Defendants breached their duties to disclose these facts, violated the ICFA, and caused injuries to Plaintiff and Class members.  The omissions and acts of concealment by Defendant pertained to information material to Plaintiff and Class members in that it would have been likely to deceive them based on reasonable consumer's expectations and assumptions based on the

safety-related nature of this defect.

80.    Defendants intended that Plaintiff and the Class would rely on its deceptions. Plaintiff and the Class did rely on them and were actually deceived.

81.    Plaintiff and the Class suffered the loss of the moneys paid for the Product, as well as consequential damages, as a proximate result of the deception.  Had Defendants not engaged in the deceptive practices and omissions described above, Plaintiff and the Class would not have purchased the Product or would have paid less.

82.    Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain compensatory damages, restitution, interest, reasonable attorney's fees, allowable expenses, and all other relief allowed by law.

<strong><u>COUNT III</u></strong>

<strong>UNJUST ENRICHMENT</strong>

83.    Named Plaintiff repeats and re-alleges every allegation in paragraphs 1-58 as though fully set forth at length herein.

84.    As Plaintiff and the Class show just grounds for recovering money to pay for benefits Defendants received from them, they have a right to restitution at law.

85.    Plaintiff and members of the Class conferred a benefit upon Defendants by purchasing Amla Relaxer from Defendants, which enriched Defendants.

86.    Defendants had knowledge that this benefit was conferred upon them.

87.    Defendants, having received such benefits, are required to make restitution as the circumstances here are such that, as between the two, it is unjust for Defendants to retain such monies based on the illegal conduct described above.  Such money or property belongs in good conscience to Plaintiff and the Class members and can be traced to funds or property in

Defendants' possession.   Plaintiff and Class members have unjustly enriched Defendants through payments and the resulting profits enjoyed by Defendants as a direct result of such payments.   Plaintiff's and Class members' detriment and Defendants' enrichment were related to and flowed from the conduct challenged in this Complaint.

88.   An entity that has been unjustly enriched at the expense of another is required to make restitution to the other.   Under common law principles recognized in claims of common counts, assumpsit, and quasi-contract, as well as principles of unjust enrichment, under the circumstances alleged herein it would be inequitable for Defendants to retain such benefits without paying restitution or damages therefor.   Defendants should not be permitted to retain the benefits conferred via payments to be received from and/or paid by Plaintiff and Class members as a result of such transactions, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

## COUNT IV

## NEGLIGENCE – FAILURE TO WARN

89.   Named Plaintiff repeats and re-alleges every allegation in paragraphs 1-58 as though fully set forth at length herein.

90.   At all times referenced herein, Defendants were responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and/or selling Amla Relaxer to Plaintiff and the Class.

91.   At all times material hereto, the use of Amla Relaxer in a manner that was intended and/or reasonably foreseeable by Defendants involved substantial risk of hair loss and other health damages alleged herein.

92.   At all times the risk of substantial hair loss and other health damages was known

or knowable by Defendants, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

93.     Defendants, as the manufacturers, distributors and/or sellers of Amla Relaxer, had a duty to warn Plaintiff and the Class of all dangers associated with the intended use.

94.     Defendants were negligent and breached their duty of care by negligently failing to give adequate warnings to purchasers and users of Amla Relaxer, including Plaintiff, about the risks, potential dangers and defective condition of the Product.

95.     Defendants knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using Amla Relaxer as described herein, and knew that Plaintiff and Class members could not reasonably be aware of those risks.  Defendants failed to exercise reasonable care in providing the Class with adequate warnings.

96.     As a direct and proximate result of Defendants' failure to adequately warn consumers about the risks and dangers of using Amla Relaxer, Plaintiff and the Class have suffered damages as set forth herein.

## COUNT V

### NEGLIGENCE – FAILURE TO TEST

97.     Named Plaintiff repeats and re-alleges every allegation in paragraphs 1-58 as though fully set forth at length herein.

98.     Defendants did not perform adequate testing on Amla Relaxer, which was defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied and/or sold to Plaintiff and the Class.

99.     Adequate testing would have revealed the serious deficiencies in the Amla

Relaxer in that it would have revealed the substantial hair loss occasioned by use of the Products.

100.    Defendants had, and continue to have, a duty to exercise reasonable care to properly design—including the duty to test—the Product that they introduce into the stream of commerce.

101.    Defendants breached these duties by failing to exercise ordinary care in the design and testing of Amla Relaxer, which they introduced into the stream of commerce, because Defendants knew or should have known that the Product causes substantial hair loss and other health damages.

102.    Defendants knew or reasonably should have known that Class members such as Plaintiff would foreseeably suffer economic damages or injury and/or be at an increased risk of suffering damage and injury, as a result of their failure to exercise ordinary care in the design of Amla Relaxer by failing to conduct appropriate testing.

103.    By reason of the foregoing, Plaintiff and the Class experienced and/or are at risk of experiencing financial damage and injury.

104.    As a direct and proximate result of Defendants' failure to test Amla Relaxer designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied and/or sold by Defendants, Plaintiff and the Class have suffered damages.

## COUNT VI

### STRICT PRODUCTS LIABILITY

105.    Named Plaintiff repeats and re-alleges every allegation in paragraphs 1-58 as though fully set forth at length herein.

106.    Defendants were the manufacturers or suppliers of Amla Relaxer.

107.    As described herein, the Product possessed a defect in manufacturing.

108.    The defect in the Product existed at the time the Product left Defendants' possession.

109.    The Product caused harm and injury to Plaintiff and the proposed Class in that it caused and causes hair loss, hair damage, scalp damage, and other damages as alleged herein.

110.    Plaintiff's use of the Product occurred in a manner that was reasonably foreseeable to Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff respectfully requests the following relief:

a.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

b.    Appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

c.    Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

d.    Award pre-judgment and post-judgment interest on such monetary relief;

e.    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to replace the Amla Relaxer with non-defective products, and/or repay Plaintiff and Class members, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the defect;

f.    Award reasonable attorneys' fees and costs; and

g.      Grant such further relief that this Court deems appropriate.

## JURY TRIAL DEMANDED

Named Plaintiff demands a trial by jury on all issues so triable.


Dated: October 25, 2016                Respectfully submitted,

By:    /s/ Charles J. LaDuca

Charles J. LaDuca (NY State Bar Number 3975927)
William H. Anderson (To Apply *Pro Hac Vice*)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
Tel: (202) 789-3960
Fax: (202) 789-1813
charlesl@cuneolaw.com
wanderson@cuneolaw.com

Peter Gil-Montllor (NY State Bar Number 5300553)
**CUNEO GILBERT & LADUCA, LLP**
16 Court Street
Suite 1012
New York, NY 11241
Tel: (202) 789-3960
Fax: (202) 789-1813
pgil-montllor@cuneolaw.com

Michael McShane (To Apply *Pro Hac Vice*)
Clinton Woods (To Apply *Pro Hac Vice*)
**AUDET & PARTNERS, LLP**
221 Main St., Suite 1460
San Francisco, CA 94105
Tel: (415) 568-2555
Fax: (415) 568-2556
mmcshane@audetlaw.com
cwoods@audetlaw.com

Charles E. Schaffer (To Apply *Pro Hac Vice*)
**LEVIN, FISHBEIN, SEDRAN AND BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Tel: (215) 592-1500
Fax: (215) 592-4663

*Attorneys for Plaintiffs and the Proposed Class*